Macio ENNIS, Petitioner-Appellant,

v.

E. LeFEVRE, Superintendent, Clinton Correctional Facility, Respondent-Appellee.

No. 945, Docket 76–2155.

United States Court of Appeals, Second Circuit.

Argued March 28, 1977.

Decided Aug. 9, 1977.

Gurfein, Circuit Judge, and Newman, District Judge, concurred and filed opinions.

Sheila Ginsberg, The Legal Aid Society, Federal Defender Services Unit, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for petitioner-appellant.

Burton Herman, Asst. Atty. Gen., State of New York, New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before GURFEIN and MESKILL, Circuit Judges, and NEWMAN, District Judge *.

MESKILL, Circuit Judge:

Petitioner, Macio Ennis, appeals from an order of the United States District Court for the Eastern District of New York, Mark A. Costantino, *Judge*, denying his application, pursuant to 28 U.S.C. § 2254, for a writ of habeas corpus. The issues raised on appeal relate to petitioner's inability to ob-

* Hon. Jon O. Newman, District of Connecticut, sitting by designation.

tain a transcript of the minutes of a *Wade*[1] hearing for use in connection with the direct appeal of his criminal conviction in state court.

*Facts.*

On January 30, 1973, Bertha Reed was sitting in the laundry room of her Brooklyn, New York, apartment building, waiting for her laundry to dry, when a man approached her from behind, put his hand around her neck and held a straight razor close to her face. The assailant forced her into an adjacent incinerator room where he forced her to close the door, turn off the lights and undress. While Miss Reed was undressing, the man made two remarks which left little doubt concerning his intentions. Fortunately, the superintendent of the building happened by and interrupted the crime by opening the door. The man fled, and when he did so Miss Reed caught a glimpse of his face. She recognized him as an individual whom she had seen in the building elevator earlier that day. At trial in the Kings County Supreme Court, Miss Reed identified petitioner as the man who had attacked her. She also testified that she had identified petitioner on two occasions prior to trial. The first occurred while she was in the hospital for reasons unrelated to this case. A police detective showed her a photographic spread from which she selected a picture of petitioner. The second occurred in the Brooklyn Criminal Courthouse when, at the request of a police detective, Miss Reed walked into a courtroom where the petitioner was present.[2] She identified the petitioner as her assailant. Apparently the recognition was mutual, for when the petitioner saw Miss Reed he left the courtroom. A jury convicted the petition of second degree kidnapping, N.Y. Penal Law § 135.20, and he was sentenced to an indeterminate term of imprisonment of from five to fifteen years.

Petitioner appealed to the Appellate Division of the New York State Supreme Court, Second Department. Because he was indigent, the petitioner was provided with assigned counsel under N.Y. County Law art. 18–B. In accordance with N.Y.Crim. Proc.Law § 460.70, petitioner was also provided with a free copy of the transcript of his trial. For some reason, it did not contain the minutes of the *Wade* hearing which had been conducted during the morning of the first day of trial. The minutes of that hearing were in fact available for transcription.

When petitioner, who was incarcerated at the time, noticed that the transcript was incomplete, he contacted both his assigned counsel and the official court reporter for the Kings County Supreme Court. The record does not reveal what counsel's response was, but it is clear that he never obtained the minutes in question. The court reporter's written response was as follows:

Mr. Ennis, I am in receipt of your letter in reference to a hearing that took place during your trial. But, you have not given me the dates or the witnesses. I know that there was a hearing and I can remember what happened, but I don't know exactly what you want. I am willing to get you the minutes if you give me more specifics on it. Also you have not indicated how you wish this to payed [sic] for. Are you asking for them as a part of your appeal? If so, please give me the necessary forms to pay for the minutes. If you are going to pay for them privately, please notify me of this.

The record discloses no further communications between petitioner and the court reporter. Petitioner also moved, in the Appellate Division, for the replacement of his assigned counsel. Counsel filed an affidavit in which he said he had no objection to being relieved, and in which he complained that petitioner "constantly seeks to direct all legal proceeding [sic]." The motion was denied.

---

1. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

2. According to Miss Reed's testimony at the *Wade* hearing, petitioner was one of "many" individuals in the courtroom.

Petitioner filed a *pro se* supplemental brief in the Appellate Division. He argued that the absence of the *Wade* minutes denied him adequate appellate review. *See Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *cf. People v. Pitts*, 46 A.D.2d 745, 360 N.Y.S.2d 668 (1st Dept. 1974) (denial of indigent's application for *Wade* and suppression hearing minutes for use at trial entitled him to new trial).

The Appellate Division did not deal with petitioner's *pro se* arguments. Instead, it focused on the single issue pressed by his appointed counsel. The court held that under the merger doctrine of *People v. Lombardi*, 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967), petitioner's conviction for second degree kidnapping could not stand because the evidence showed only that Miss Reed's detention was incidental to the commission of the crimes of attempted rape and sexual misconduct, crimes with which petitioner was not charged. The court modified the judgment of conviction by reducing it to the lesser included offense of unlawful imprisonment in the first degree, N.Y. Penal Law § 135.10, and the case was remanded for resentencing. *People v. Ennis*, 50 A.D.2d 935, 377 N.Y.S.2d 600 (2d Dept. 1975).

Prior to resentencing, petitioner, proceeding *pro se*, sought leave to reargue the appeal based on the failure of the State to supply him with the *Wade* minutes. After he was resentenced to four years imprisonment, the State, without addressing the merits of the *Wade* issue, opposed his motion on the ground that the issue had been waived as a result of petitioner's failure to raise it prior to the appeal. The Appellate Division denied leave to reargue, and the New York Court of Appeals subsequently denied leave to appeal.

Petitioner, again proceeding *pro se*, then filed a § 2254 motion in the Eastern District. Two of his claims are relevant on this appeal. First, he claims that the

State's failure to provide him with the *Wade* minutes denied him adequate appellate review. *See Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Second, he claims that he was denied the effective assistance of counsel.[3]

The district court held that the absence of the *Wade* minutes from the state court record on petitioner's direct appeal was attributable to his own failure properly to request them, and not to any unlawful action by the State. The court also rejected petitioner's claim of ineffective assistance of counsel, citing counsel's success in obtaining for petitioner a modification of his judgment of conviction. This Court appointed the Legal Aid Society to represent petitioner on appeal.

*Discussion.*

■ The federal Constitution does not require the states to provide for appellate review of criminal convictions. When a state does so, however, it has a duty "to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process." *Ross v. Moffitt*, 417 U.S. 600, 616, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974). For over twenty years, that duty has included an obligation to provide trial transcripts, or an acceptable substitute, to appellants who are unable to pay for them. *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The transcript thus provided must afford "a 'record of sufficient completeness' to permit proper consideration of [the indigent's] claims." *Draper v. Washington*, 372 U.S. 487, 499, 83 S.Ct. 774, 781, 9 L.Ed.2d 899 (1963), *quoting Coppedge v. United States*, 369 U.S. 438, 446, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The State of New York has undertaken to discharge its duty by automatically providing indigents with transcripts of the minutes of trial court proceedings for the purpose of both civil and criminal appeals. N.Y.C.P.L.R. 1102; N.Y.Crim.Proc.Law § 460.70.

---

3. The district court granted a certificate of probable cause with respect to the *Griffin* claim, but denied a certificate with respect to the claim of ineffective assistance of counsel.

By order dated March 14, 1977, Judge Gurfein granted petitioner's motion for a certificate of probable cause as to the latter claim.

Thus, it is clear that as a matter of both state statutory law and federal constitutional law, petitioner had a right to be provided with the minutes of his *Wade* hearing. The failure of the State to provide them, however, would be harmless error if they were irrelevant to the claims presented by petitioner on appeal. This is so because the right to a "record of sufficient completeness" does not exist in the abstract; rather, it exists in order to ensure that the accused will have an adequate opportunity to present specific, individual claims. In the instant case, only one issue was raised on petitioner's direct appeal, namely, the merger issue urged successfully by his lawyer. No issue of identification was raised, and consequently the *Wade* minutes were wholly unnecessary to permit a proper consideration of petitioner's claim.

Petitioner's real complaint is that, despite his requests, his appointed counsel failed to raise the issue of identification, or even to pursue it by studying the *Wade* minutes. Petitioner's claim that the State denied him the *Wade* minutes is in reality a claim that the State should have considered his identification claim, notwithstanding his lawyer's failure to raise it. This theory appears to be based on the mistaken notion that, even after petitioner's own lawyer ignored his request that the identification issue be raised, the State remained obligated to comply with his requests for the *Wade* minutes and to consider his supplemental *pro se* brief.

There is certainly a right to appear *pro se. Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), as well as a right to appointed counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). "Obviously, however, those rights cannot be both exercised at the same time." *United States v. Mitchell*, 137

F.2d 1006, 1010, *aff'd on rehearing*, 138 F.2d 831 (2d Cir. 1943), *cert. denied*, 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083 (1944); *see United States v. Wolfish*, 525 F.2d 457, 462–63 & n. 2 (2d Cir. 1975), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976).[4] A defendant who elects to be represented by counsel surrenders the right to make the ultimate decision on a wide variety of matters. *See* ABA Standards Relating to the Defense Function § 5.2. The courts have increasingly come to recognize that a lawyer's decisions, at least on those subjects for which he bears the ultimate responsibility, will ordinarily be binding, even though important constitutional rights may be lost. *See Wainwright v. Sykes*, —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 n. 14 (1977); *id.* —— U.S. at ——, 97 S.Ct. 2497 (Burger *C. J.*, concurring); *id.* —— U.S. at —— & nn. 1–2, 97 S.Ct. 2497 & nn. 1–2 (Stevens, *J.*, concurring); *see Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *cf. Henry v. Mississippi*, 379 U.S. 443, 451–52, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). *See also Kibbe v. Henderson*, 534 F.2d 493, 496–97 (2d Cir. 1976), *rev'd on other grounds*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), and cases cited therein. While all would agree that the decision whether to take an appeal from a criminal conviction is a critical one committed ultimately to the defendant himself, decisions concerning which legal issues will be urged on appeal are uniquely within the lawyer's skill and competence, and their resolution is ultimately left to his judgment. *See United States ex rel. Brown v. Warden*, 417 F.Supp. 970, 973 (N.D.Ill.1976). Thus, petitioner was bound by his lawyer's decision not to press the identification issue, and therefore the failure of the State to provide him with the minutes of his *Wade* hearing must be regarded as harmless error.[5]

---

4. The rationale underlying this rule was aptly described by petitioner's appellate counsel who, in explaining to the Appellate Division why he had no objection to being replaced as counsel on appeal, said "there should not be two captains on a ship."

5. After oral argument in this case, the State provided this Court with one copy of the transcript of the *Wade* minutes. Although we have examined its contents, we have not relied upon it in arriving at this decision. Based upon our review of the minutes, however, we believe that allowing petitioner to examine them, along with the transcript of Justice Koota's oral opin-

Of course, if counsel failed to press an argument that had obvious merit, *United States ex rel. Maselli v. Reincke*, 383 F.2d 129 (2d Cir. 1967); or if he failed to act as an advocate on petitioner's behalf, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); or if counsel failed to obtain an adequate record, *Entsminger v. Iowa*, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967); or if he failed to make a conscientious investigation, *United States ex rel. Brown v. Warden, supra*, 417 F.Supp. at 974, then petitioner may have been denied the effective assistance of counsel, and that issue may be raised notwithstanding the otherwise binding nature of the challenged decision made by counsel. *See United States ex rel. Machado v. Wilkins*, 351 F.2d 892, 895 (2d Cir. 1965), *cert. denied*, 383 U.S. 916, 86 S.Ct. 908, 15 L.Ed.2d 670 (1966). *See also Wainwright v. Sykes, supra*, —— U.S. at ——, 97 S.Ct. 2497 (White, *J.*, concurring); *id.* at —— U.S. at ——, 97 S.Ct. 2497 (Brennan, *J.*, dissenting). This brings us to the second issue raised by petitioner on this appeal.

■ Petitioner contends that he was denied the effective assistance of counsel. At the district court level, this claim focused on (1) the refusal of the Appellate Division to grant his motions for assignment of new counsel, (2) an alleged, but unspecified, conflict of interest, (3) counsel's alleged ignorance of criminal law, and (4) the allegation that the two-page brief submitted by counsel relied solely on research done by petitioner. The district judge rejected these claims and denied petitioner a certificate of probable cause. On appeal,[6] the focus of petitioner's claim has shifted. He now claims that the failure of counsel to obtain the *Wade* minutes amounts to incompetence. We do not reach the merits of this issue, for it does not appear from the record that petitioner has ever presented it, or indeed any issue relating to the lack of effective assistance of counsel, to the state courts. This failure to exhaust available

state remedies precludes federal habeas corpus relief. 28 U.S.C. § 2254(b) & (c).

The denial of the petition is affirmed.

GURFEIN, Circuit Judge (concurring):

I concur in the result but I cannot agree with all the reasoning of my brother Meskill in reaching the result. Appellant raises two points; first, that the State failed to provide him with the minutes of the *Wade* hearing on identification and that this failure amounted to a constitutional violation. Second, that he was denied effective assistance of counsel.

I would not say, as Judge Meskill does, that the issue of identification raised in the *Wade* hearing was "irrelevant" to his appeal. I base my conclusion that the judgment should be affirmed on different grounds. There is no New York policy of denying access to *Wade* hearing transcripts by indigent appellants. The cases dealing with a constitutional right to transcripts concern broad state policies which actually discriminate against the poor. *See Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (payment of cost required from all); *Lane v. Brown*, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963) ("Indiana procedure"); *Draper v. Washington*, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963) (no free transcript unless trial judge found appeal not frivolous); *Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961) (filing fee); *Burns v. Ohio*, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959). These decisions stand for the proposition that a state cannot arbitrarily cut off appeal rights for indigents while leaving open avenues of appeal for more affluent persons. See *Ross v. Moffitt*, 417 U.S. 600, 607, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (per Rehnquist, *J.*). New York does not do that by statute, by rule or by common usage. *See People v. Pitts*, 46 A.D.2d 745, 360 N.Y.S.2d 668 (1st Dep't 1974).

To make a constitutional violation, which therefore would be cognizable under the equal protection clause of the Fourteenth

---

ion, may well persuade him that further proceedings will prove fruitless.

**6.** See note 3, *supra*.

Amendment, some state action directed specifically against appellant would have to be found. The *State* did not deny Ennis a free *Wade* transcript. He simply failed to seek it properly. There is no Fourteenth Amendment issue. But since Ennis had an appointed lawyer, he cannot necessarily be taxed with his own ignorance of the procedural remedy available. The claim inevitably shifts to an alleged inadequacy of his legal representation.

As Judge Meskill correctly notes Ennis has never presented this claim of ineffectiveness of counsel amounting to a Sixth Amendment deprivation to the state courts and has not therefore exhausted his state remedy. 28 U.S.C. § 2254(b) and (c). I agree that we must deny the petition for this reason. Having reached that conclusion, I do not find it necessary to decide whether the raising of the single issue of merger by counsel in the Appellate Division necessarily precluded the issue of identification sought to be raised by appellant himself. The identification issue, if a serious issue, may perhaps not be left entirely to the lawyer's decision not to press it as an issue on appeal any more than the critical decision whether to take an appeal from a criminal conviction can be taken away from a defendant by his lawyer. *See, e. g., U. S. v. Reincke,* 383 F.2d 129 (2d Cir. 1967). Nor would I agree to a general statement that once a defendant has a lawyer, *everything* and *anything* he asserts must fall on deaf ears. While it is generally true that one cannot have a lawyer and act *pro se* at the same time, there may be exceptions of constitutional magnitude which should not be foreclosed by generalization. In *Wainwright v. Sykes,* —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) the *timely* failure to object at trial prejudiced the prosecution. Here the vice of inadequate representation was laid in a post-trial setting. Whether that makes a decisive difference is an issue we do not have to decide.

NEWMAN, District Judge (concurring):

I agree that the absence of a transcript of the *Wade* hearing on appeal did not deny petitioner any federally protected right. But in the circumstances of this case, I would not remit petitioner to another round of state and federal court proceedings in order to litigate his further claim that the failure of his appellate counsel to challenge the identification testimony and obtain the *Wade* transcript for this challenge denied him effective assistance of counsel.

Exhaustion of state judicial remedies is a requirement grounded in considerations of comity, not an absolute jurisdictional barrier. *Fay v. Noia,* 372 U.S. 391, 415–420, 83 S.Ct. 822, 9 L.Ed.2d 837 (1962); *United States ex rel. Johnson v. Vincent,* 507 F.2d 1309, 1312 (2d Cir. 1974), *cert. denied,* 420 U.S. 994, 95 S.Ct. 1435, 43 L.Ed.2d 678 (1975).[1] In the state courts petitioner's attack on counsel's effectiveness was clear, even if not worded in Sixth Amendment terms. He surely brought to the attention of the state courts his dissatisfaction with his appellate counsel, and his preference to have him replaced, in part for not raising the *Wade* issue. I think the interests of New York will be better respected if this Court views petitioner's challenge as sufficient to warrant federal court consideration now, rather than precipitating a new round of collateral proceedings that will furnish business for three layers of the state court system before an inevitable return to the federal courts.

By no stretch of the imagination was petitioner's appellate counsel ineffective in the Sixth Amendment sense. On the contrary, he was most effective. From the possible issues to be raised on appeal, he focused on an important one with likelihood of success and did not risk obscuring its worth in a welter of trivia. His good sense resulted in a victory on appeal which short-

1. A federal court need not decline to exercise jurisdiction, even when a petitioner has not precisely met the exhaustion requirement, where a decision on the merits by the federal court does no offense to comity, or where the need for a prompt adjudication of the federal claim clearly outweighs the comity considerations. *See, e. g., United States ex rel. Wolfersdorf v. Johnston,* 317 F.Supp. 66 (S.D.N.Y. 1970); *United States ex rel. Barber v. Hendrick,* 315 F.Supp. 798 (E.D.Pa.1970).

ened petitioner's sentence by eleven years. Having reviewed the transcript of the *Wade* hearing, I am entirely satisfied that while a non-frivolous challenge could have been made, petitioner's appellate counsel cannot be faulted for considering the probability of success too slight to merit inclusion in the initial appeal. And there is no reason to assume that review of the *Wade* hearing transcript was the only way for him to assess the worth of the identification issue. He could have learned the substance of the identification procedures from trial counsel, from the petitioner, or from his own review of the trial transcript, which included references to both the display of photographs and the pre-trial courtroom identification. In any event his conclusion affords no basis for complaint.

I would affirm the judgment, rejecting on the merits both of petitioner's claims.